UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CHINA BEDS DIRECT, LLC, *et al.*, ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:21-CV-113 |
| ) | |
| BENJAMIN L. FOLKINS, *et al.*, ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Benjamin L. Folkins ("Folkins") and Upward Mobility, Inc.'s ("Upward Mobility") (collectively, "Defendants") Motion to Dismiss [Doc. 30], and Plaintiff China Beds Direct, LLC ("China Beds"), Healthcare Group (Hong Kong) Company, Limited ("Healthcare Group"), and Healthcare Company, LTD's ("Healthcare Co.") (collectively, "Plaintiffs") Motion for Hearing on Response in Opposition to Motion [Doc. 34] and Motion for Reconsideration [Doc. 37]. For the following reasons, Defendant's Motion to Dismiss [Doc. 30] is **GRANTED**, and Plaintiffs' Motion for Hearing [Doc. 34] and Motion for Reconsideration [Doc. 37] are **DENIED**.

### I. BACKGROUND

This case is interwoven with state-court litigation which originated in the Hamilton County Chancery Court. The state case is currently in the appeals process.[1] Plaintiffs brought this federal

---

[1] China Beds, Healthcare Group, and Healthcare Co. have noticed an appeal of the final judgment of the Chancery Court of Hamilton County, and the appeal is still pending. *See Benjamin L. Folkins et al. v. Healthcare Group (Hong Kong) Co., Limited et al.*, Tennessee State Courts, available at https://www.tncourts.gov/PublicCaseHistory/CaseDetails.aspx?id=84095&Business=True (last accessed Sept. 26, 2022). Courts can take judicial notice of the contents of a government website. *See e.g., Oak Ridge Envtl. Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under FED. R. EVID. 902, and courts may accordingly take judicial notice of the information found on these websites."

1

action on May 25, 2021, claiming that in the Hamilton County case, Defendants were "seeking to enforce what the federal antitrust laws have long forbidden as per se illegal: namely, market and allocation agreements between competitors." [Doc. 1, at 1].

According to Plaintiffs' Amended Complaint, in 2008, Defendant Folkins created a company, Defendant Upward Mobility, to sell mattresses and bedding products. [Doc. 12, at 1–2, 6]. Prior to 2011, Upward Mobility purchased unbranded mattresses from Plaintiff Healthcare Co., the parent company of Plaintiff Healthcare Group. [*Id.* at 6–7]. Upward Mobility sold at least some of those unbranded mattresses under the trade name BedBoss to both individual and corporate customers, such as hotels and small-scale retailers. [*Id.* at 7]. Around this same time, Healthcare Co. also manufactured branded mattresses under the trade name MLILY outside the United States. [*Id.*]. In 2011, Folkins traveled to China to meet with the president of Healthcare Co., James Ni, about selling MLILY products in the United States. [*Id.*]. As a result, China Beds was formed in March 2011, with Folkins and Healthcare Group as the members of China Beds. [*Id.*].

On December 27, 2011, Folkins and Healthcare Group entered into an operating agreement (the "2011 Operating Agreement") which named Folkins President and Chief Operating Officer of China Beds. [*Id.* at 2, 7–8; Doc. 12-2, at 2]. While holding this position, Folkins was also a majority stockholder and Chief Executive Officer of Upward Mobility, which continued to sell mattresses in competition with China Beds. [Doc. 12, at 8]. Pursuant to the 2011 Operating Agreement, China Beds purchased bedding products from Healthcare Group and Healthcare Co., which also sold mattresses to Upward Mobility. [*Id.*].

---

(citations omitted)); *Community Health Sys., Inc. v. Med. Univ. Hosp. Authority*, No. 3:20-cv-00163, 2021 U.S. Dist. LEXIS 47999, at *14 n.6 (M.D. Tenn. Mar. 15, 2021) (noting that the Court can take judicial notice of a government website when ruling on a motion to dismiss) (collecting cases), *vacated on other grounds*, 2022 U.S. Dist. LEXIS 94468 (M.D. Tenn. Mar. 18, 2022).

After the execution of the 2011 Operating Agreement, Plaintiffs continued to compete with Defendants. [*Id.* at 2, 9]. This led to modifications of the 2011 Operating Agreement, which Plaintiffs allege sought to limit competition between Plaintiffs and Defendants by insisting that Healthcare Group and Healthcare Co. not compete in certain distribution channels and for certain customers for mattresses. [*Id.* at 2, 8; Docs. 12-3, 12-5]. For instance, in 2013 and 2014, Folkins discovered that Healthcare Co. was selling products to companies in the United States that owned fewer than 20 stores, the same market targeted by Upward Mobility. [Doc. 12, at 9]. Folkins was still a minority owner of China Beds at this time. [*Id.* at 9]. This led to the parties' 2011 Operating Agreement being revised by Folkins in 2014 (the "2014 Operating Agreement") to include what Plaintiffs term as "Customer and Market Allocation Provisions," which attempt to define the customers and markets where China Beds, Upward Mobility, and Healthcare Co. could sell products. [*Id.* at 2, 8, 10–11; Doc. 12-3, at 3–4]. In one such Customer and Market Allocation Provision from the 2014 Operating Agreement, the language states that "Healthcare [Group] will not sell other customers below the price set for China Beds Direct, its own company," and that Healthcare Group will not add new "wholesale distribution" customers to compete "with MLILY's style of business" in the United States beyond those who did business with Healthcare Group prior to January 2012. [Doc. 12, at 10–11; Doc. 12-3, at 3].

Plaintiffs continued to compete, and a new operating agreement was subsequently signed in 2016 (the "2016 Operating Agreement"), as well as a distribution agreement (the "2016 Distribution Agreement") (collectively, the "2016 Agreements"). [Doc. 12, at 2, 9, 12; Docs. 12-4 and 12-5]. The 2016 Distribution Agreement contained further Customer and Market Allocation Provisions, namely a section of clauses entitled "Non-Compete, Non-Solicitation" which placed limitations on Plaintiffs' ability to compete independently for customers in the hospitality industry

for at least five years, along with setting other price, customer, and market restrictions. [Doc. 12, at 12–14; Doc. 12-5, at 3–4]. Plaintiffs argue that the 2016 Agreements further ensured that Plaintiffs "could not compete for any of Upward Mobility's current customers or any new customers that Upward Mobility might seek to acquire in other markets." [Doc. 12, at 14]. Plaintiffs allege that there is no pro-competitive business justification or any other business rationale for the Customer and Market Allocation Provisions of the 2014 Operating Agreement or the 2016 Distribution Agreement. [*Id.* at 14–15]. Ultimately, Plaintiffs argue that by excluding Healthcare Co. and Healthcare Group from competing for sales *except* for sales made through China Beds, in which Folkins owned a minority share, the 2014 Operating Agreement and the 2016 Distribution Agreement unreasonably restrained competition and trade between the parties. [*Id.* at 16].

Folkins withdrew from China Beds in December 2016 and brought suit against Plaintiffs in the Chancery Court of Hamilton County, Tennessee. [*Id.* at 16–17]. In the Hamilton County lawsuit, Defendants alleged that Plaintiffs breached the parties' 2011, 2014, and 2016 Operating Agreements as well as the 2016 Distribution Agreement.[2] [*Id.* at 3, 17; *see generally* Doc. 12-1]. Plaintiffs sought to amend their state-court answer to raise an affirmative defense that the Customer and Market Allocation Provisions were contrary to public policy, null, void, illegal, and unenforceable for violating federal and state antitrust law. [Doc. 12, at 3, 18]. However, the state court did not allow Plaintiffs to amend their complaint to raise this affirmative defense. [*Id.* at 3, 18–19].

---

[2] In total, Defendants' state court complaint sought relief for breach of the 2011, 2014, and 2016 Operating Agreements, unjust enrichment, breach of the 2016 Distribution Agreement, breach of fiduciary duties, intentional inference with business relationships, procurement of breach of contract, and conversion. [Doc. 12-1, at 21–28].

Plaintiffs then brought this federal action under the Sherman Act and the Declaratory Judgment Act, claiming that the "market and consumer allocation provisions that form the basis and calculations of many of the Defendants' claims" in the state court proceeding were illegal, unenforceable, and contrary to public policy as they would violate Section 1 of the Sherman Act and state antitrust law. [*Id.* at 3–4]. In sum, Plaintiffs argue that if these Customer and Market Allocation Provisions are enforced, it would compel a federal antitrust violation. [*Id.* at 4]. Plaintiffs seek injunctive relief in Count Two and declaratory judgments in Counts One and Three with respect to enforcement of the challenged provisions of the parties' 2016 Distribution Agreement and the 2011, 2014, and 2016 Operating Agreements. [*Id.* at 4, 6, 19–22]. Plaintiffs also previously sought a preliminary injunction to prevent the case before the state court from proceeding to trial. The Court denied this request in a written order (the "Preliminary Injunction Order") on September 29, 2021. [Doc. 36]. The jury verdict, among other things, found that Healthcare Group breached the 2016 Operating Agreement and awarded Defendants north of $4 million on this claim. [Doc. 35-1, at 2].

Defendants filed a Motion to Dismiss prior to the issuance of the Court's Preliminary Injunction Order. [*See* Doc. 30]. Plaintiffs have responded [Docs. 33, 37], and this matter is now ripe for the Court's review.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that create a reasonable inference that the defendant is liable for the alleged conduct in the complaint. *Id.*

When considering a motion to dismiss under Rule 12(b)(6), a court accepts the allegations in the complaint as true and construes them in a light most favorable to the plaintiff. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. *Iqbal*, 556 U.S. at 678. A plaintiff's allegations must consist of more than "labels," "conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

### III. ANALYSIS

#### A. Motion to Reconsider

As an initial matter, Plaintiffs seek reconsideration of the Preliminary Injunction Order. [Doc. 37]. However, Plaintiffs explicitly state that "the controversy for which the preliminary injunction was sought, namely, the trial of the lawsuit in which the Defendants (Plaintiffs herein) were precluded from presenting an antitrust defense to the claims of the Plaintiff, is moot[.]" [Doc. 37, at 1]. Rather, Plaintiffs filed their Motion for Reconsideration because "arguments under the Clayton Act made by the Defendants herein may be applicable to the instant motion to dismiss filed by the Defendants." [*Id.*]. Accordingly, the Court will **DENY AS MOOT** Plaintiff's Motion for Reconsideration [Doc. 37] and instead construe Plaintiff's Motion and reply as supplemental briefing to the Motion to Dismiss in light of the Court's Preliminary Injunction Order. Although these pages put Plaintiff over the page limit for a response to a motion pursuant to Local Rule 7.1,

6

and there was no page extension sought, the Court will consider the Plaintiffs' excess pages and the Defendants' response in the interest of justice.

### B. Motion for Hearing

Plaintiffs moved for a hearing regarding the briefing on Defendants' Motion to Dismiss. [Doc. 34]. The Court sees no need for a hearing in this matter, as much of the parties' briefing is similar to and derivative of arguments made in the prior preliminary injunction briefing. Further, the remaining arguments regarding statute of limitations and factual sufficiency of Plaintiff's claims are not determinative in this action, nor are they so novel or complex as to require a hearing. Therefore, Plaintiffs' Motion for Hearing [Doc. 34] is **DENIED**.

### C. Motion to Dismiss

Pursuant to the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Thus, the Act "creates an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004) (citations omitted). Importantly, the Supreme Court has instructed that "any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. C. L. R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 297 (1970).

Defendants argue in their Motion to Dismiss that the Plaintiffs' claims are: (1) barred under the Anti-Injunction Act; (2) time-barred by the statute of limitations in antitrust cases; (3) deficient for purposes of standing; and (4) facially factually implausible. [*See* Doc. 30]. As explained below,

7

the Court finds Defendants' first argument dispositive and will therefore **GRANT** dismissal on this basis. Because the Court cannot grant Plaintiffs' requested relief due to the Anti-Injunction Act, the Court need not reach the parties' arguments regarding the statute of limitations under the Sherman Act, standing, or failure to state a claim under Federal Rule of Civil Procedure 12.

Plaintiffs argue in their supplemental briefing [Doc. 37] that their claims under the Sherman Act are exempted from the Anti-Injunction Act because the Sherman Act is "intertwined" with Section 16 of the Clayton Act. [Doc. 37, at 2–3]. Plaintiffs also argue that their requests for declaratory judgment must proceed because this Court has "exclusive jurisdiction over issues of federal antitrust law" and is not barred from issuing them declaratory relief by the Anti-Injunction Act. [Doc. 33, at 14–16]. The Court will address why each argument is unavailing in turn.

i. **The Court Cannot Grant Injunctive Relief for Plaintiffs' Claims Under Section 1 of the Sherman Act Because This Action is not "Expressly Authorized by Congress" Under 28 U.S.C. § 2283**

With respect to injunctive relief, the parties' briefing is almost exclusively focused on whether claims under the Sherman Act are expressly authorized by Act of Congress as an exception to the Anti-Injunction Act, and not whether an injunction is necessary in aid of the Court's jurisdiction or to protect or effectuate the Court's judgments. Therefore, as a preliminary matter, the Court adopts its analysis from the Preliminary Injunction Order on these latter two points and finds that injunctive relief is not necessary in aid of the Court's jurisdiction or to protect or effectuate the Court's judgment. [*See* Doc. 36, at 4]. All that is left to address is whether Congress has "expressly authorized" this Court to intervene in state actions when relief is sought for alleged violations of the Sherman Act. 28 U.S.C. § 2283. The Court finds that Congress has not given such authorization.

The Court explained in its Preliminary Injunction Order that "federal law need not contain an express reference to the Act in order to qualify under the expressly authorized exception. *Mitchum v. Foster*, 407 U.S. 225, 237 (1972). Rather, in assessing whether a federal statute comes within the Act's 'expressly authorized' exception the statute first 'must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity,' and 'the federal right or remedy must be such that it can be "given its intended scope only by the stay of a state court proceeding."' *Id.* at 237–38 (finding that [while] 42 U.S.C. § 1983 did not have express language authorizing a federal court to enjoin a state court, it had a detailed legislative history demonstrating an intent of interposing the federal courts between improper state action and the people when state courts were being used to harass and injure individuals)." [Doc. 36, at 3].

Plaintiffs argue in their supplement that the Sherman Act and Clayton Act are so "intertwined" as to warrant an exception to the Anti-Injunction Act, because "Section 16 of the Clayton Act is the critical mechanism for injunctive relief for a violation of the antitrust laws." [Doc. 37, at 2]. Plaintiffs, in essence, make a claim reminiscent of nesting dolls—Section 16 of the Clayton Act references "antitrust laws," which by definition include the Sherman Act, and therefore Plaintiff's claims brought under the Sherman Act should also be considered claims under the Clayton Act in order to exempt those Sherman Act claims from the Anti-Injunction Act.

Plaintiffs' argument would require the Court to adopt a construction of *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1977) that it declines to accept. As explained in the Preliminary Injunction Order, Plaintiff chose to bring its claims under the Sherman Act, and the Sherman Act is not an exception to the Anti-Injunction Act. [Doc. 36, at 3 ("Plaintiffs bring allegations of violations of the Sherman Act . . . not under Section 16 of the Clayton Act[.]" (citations omitted))]. Moreover, the district court judgment overturned in *Vendo* followed a similar procedural pattern

to the path that Plaintiffs now ask this Court to follow. The appellee-plaintiff in *Vendo* brought suit in federal district court under Sections 1 and 2 of the Sherman Act, and the district court granted the appellee-plaintiff a preliminary injunction *after* the Illinois Supreme Court affirmed a judgment in the appellant-defendant's favor in state court, the district court holding that Section 16 of the Clayton Act constituted an "expressly authorized" exception to the Anti-Injunction Act. *Vendo*, 433 U.S. at 627–28; *Lektro-Vend Corp. v. Vendo Co.*, 403 F. Supp. 527, 529 (N.D. Ill. 1975). This is analogous to what Plaintiffs ask the Court to do here, except for the fact that the state court proceedings have not concluded. Plaintiffs, however, ask this Court to emulate the *Vendo* district court while ignoring the ultimate result in the case.

Through the controlling lens of Justice Blackmun's opinion,[3] Section 16 of the Clayton Act *may* be an "expressly authorized" exception to the Anti-Injunction Act in limited circumstances where the state proceedings are part of a "'pattern of baseless, repetitive claims' that are being used as an anticompetitive device, all the traditional prerequisites for equitable relief are satisfied, and the only way to give the antitrust laws their intended scope is by staying the state proceedings." *Vendo*, 433 U.S. at 644 (citations omitted). Plaintiff has not offered facts to support that Defendants' state court litigation was the result of a pattern of "baseless, repetitive claims." In fact, Defendants prevailed at trial in the state court, and this Court has no basis for determining that the state action was brought as an anticompetitive device or motivated by any other purpose

---

[3] The Court will follow the reasoning of *Bolingbrook v. Citizens Utilities Co.*, wherein the Seventh Circuit applied Justice Blackmun's opinion as controlling law. *See Bolingbrook v. Citizens Utilities. Co.*, 864 F.2d 481, 483 (7th Cir. 1988) ("Our obligation as an inferior court is to apply the decision in *Vendo*, however, which means the least common denominator, the approach contained in Justice Blackmun's opinion. 'When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]"'" (citations omitted)); *see also Mallitz v. Federal Packing Corp.*, No. C-3-91-285, 1991 U.S. Dist. LEXIS 21764, at *12 (S.D. Ohio Oct. 17, 1991) (noting that "[t]here is no authority contrary to [*Bolingbrook*] in the Sixth Circuit.").

than seeking remedies for genuine grievances. Nor has Plaintiff provided a basis for the Court to conclude that all the traditional prerequisites for equitable relief are satisfied; notably, this Court has already denied Plaintiffs' motion for a preliminary injunction. Finally, the Court cannot conclude that there has been "some equivalent showing of grave abuse of the state courts" as described by Justice Blackmun to warrant an exception to the Anti-Injunction Act. *Id.* at 644 n*.

Although the Court readily concedes that Justice Blackmun found there to be certain situations where Section 16 of the Clayton Act may be an expressly authorized exception to the Anti-Injunction Act, those situations are not in play here. Plaintiffs nonetheless urge this Court to find that a majority of Justices in *Vendo*, namely Justice Blackmun, Chief Justice Burger, Justice Stevens, and the three Justices who joined Justice Stevens in dissent, found that Section 16 of the Clayton Act is an exception to the Anti-Injunction Act. [Doc. 37, at 3, 3 n.2]. Plaintiffs specifically cite to Justice Stevens' representation that "[Justice Blackmun's] agreement with the proposition that an injunction properly entered pursuant to § 16 of the Clayton Act is within the 'expressly authorized' exception to the anti-injunction statute establishes that proposition as the law for the future." *Vendo*, 433 U.S. at 660. But a dissenting Justice's opinion in a plurality decision is not binding on this Court, and Plaintiff's argument ultimately oversimplifies the complexities of the *Vendo* decision, particularly in light of the fact that Justice Blackmun's concurrence is controlling law. *Bolingbrook*, 864 F.2d at 483. Therefore, Plaintiffs' proffered interpretation of *Vendo* is not persuasive and does not lead this Court to believed it erred in denying Plaintiff's Motion for Preliminary Injunction. Rather, that same logic applies once again and denies this Court the ability to provide Plaintiff injunctive relief due to the prohibitions of the Anti-Injunction Act.

Further, as Defendants correctly state in their briefing, "[f]ederal courts may have exclusive jurisdiction of claims under the Sherman Act, but state courts are competent to adjudicate

antitrust defenses[.]" *Bolingbrook*, 864 F.2d at 484. Of critical importance here is the fact that this matter is still being litigated in state court. In the context of the Anti-Injunction Act, "Justice Brandeis noted that the 'term ["proceedings"] is comprehensive. It includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process . . . . [It] applies not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective.'" *United States v. Billingsley*, 615 F.3d 404, 409 n.10 (5th Cir. 2010) (citation omitted). The state appellate court has not yet rendered a decision. Therefore, to the extent that Plaintiffs argue that the Sherman Act can only be given its intended scope by this Court granting injunctive relief, that is simply untrue. Plaintiffs will have the opportunity to challenge the state court's denial of their request to amend their pleadings to include an antitrust defense before the state appellate court.

      **ii.**      **The Anti-Injunction Act Prevents this Court from Granting Plaintiffs Declaratory Relief**

When an injunction is barred by the Anti-Injunction Act, any declaratory relief that has "the same practical effect as an injunction" against the state court litigation is prohibited. *Martingale*, 361 F.3d at 303 (6th Cir. 2004). The Court finds that granting Plaintiffs declaratory relief in this case would have the same practical effect as an injunction. Plaintiffs state that their claim for declaratory relief must proceed because they seek "a declaratory judgment that the buy-out provision of the 2016 Operating Agreement is unenforceable because its calculation is based upon the net income of China Beds, which is inflated because of the Defendants' per se illegal conduct contained in their written and oral customer and market allocation agreements," as if that determination can be made without first finding that the Customer and Market Allocation Provisions at issue in this case are illegal. [Doc. 39, at 4].

However, to quote Plaintiffs' Amended Complaint, in Count One they claim they are entitled to a judgment declaring that "the Customer and Market Allocation Provisions of the Operating and the Distribution Agreement[s], which Defendants are now seeking to enforce in the state court proceeding, are contrary to public policy, null, void, illegal and unenforceable as they would violate Section 1 of the Sherman Act[.]" [Doc. 12, at 20]. Plaintiffs further seek declaratory relief in Count One stating that "Defendants cannot pursue a breach of contract claim, when enforcing these Customer and Market Allocation Provisions would actually compel an antitrust violation under the Sherman Act and Tennessee state law." [*Id.*]. Declaratory relief on Count One clearly would amount to the same practical effect as an injunction, seeing as Plaintiffs seek to bar Defendants from enforcing agreements at the very heart of the state court litigation. [*Id.* at 21].

Then, in Count Three, Plaintiffs seek a Declaratory Judgment specifically regarding the buy-out provision in the 2016 Operating Agreement. [Doc. 12, at 22]. In paragraphs 90 and 91, Plaintiffs request as follows:

> Plaintiffs seek a declaration that the provisions of the 2016 Operating Agreement, relating to the buy-out of Folkins are unenforceable by virtue of the fact that Folkins bases his withdrawal solely upon the breach of the Distribution Agreement and the Operating Agreements, ***which are invalid. By reason of the invalidity of the Distribution Agreement and the Operating Agreements*** the buy-out provision of the Operating Agreement is invalid and may not be enforced.

[*Id.* (emphasis added)]. Elsewhere in the Amended Complaint, Plaintiffs state that:

> Folkins is seeking to enforce the provisions of the Operating Agreement for the purchase of his interest in the limited liability company as a result of his withdrawal and to recover in excess of $3 million. ***Because his withdrawal is based upon the alleged violation of the Customer and Market Allocation Provisions, the withdrawal is void, since the amount he is seeking as his buy-out is based upon the income of China Beds, which is based, in whole or in part, upon income from the Customer and Market Allocation Provisions.***

[*Id.* at 19 (emphasis added)]. Even reading the Amended Complaint in a light most favorable to Plaintiffs, and although Count Three does not reference the Sherman Act or specifically seek

13

declaratory relief on the basis of federal antitrust law, relief is nonetheless predicated on the Court finding that the Customer and Market Allocation Provisions are, in fact, illegal under the Sherman Act in Counts One and Two. Plaintiffs have not stated any facts by which the Court could conclude these provisions could be invalid *except* for a violation of antitrust laws. In other words, before the Court could declare the buyout provision illegal, it would first have to determine that the Customer and Market Allocation Provisions violate antitrust law and are illegal. This necessarily would interfere with the state court's judicial process.

Plaintiffs point to *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774 (5th Cir. 1993) for the proposition that this Court may consider and issue a declaratory judgment on federal issues even if it cannot grant injunctive relief. [Doc. 33, at 15]. However, it is not the authority of the Court to grant declaratory relief on federal causes of action that is called into question here. Rather, it is whether the Court can issue declaratory judgments that would have the same effect as an injunction when such an injunction would violate the Anti-Injunction Act. This, definitively, the Court cannot do, and *Travelers Ins. Co.* does nothing to alter this Court's analysis on this point.

Most notably, *Travelers Ins. Co.* is not a case concerned with antitrust law, nor is it a case from this Circuit. There, plaintiff-appellant issued an insurance policy to members of a farm bureau, one of which was the defendant-appellee. *Id.* at 775. Defendant-appellee brought suit in state court when plaintiff-appellant unilaterally terminated insurance coverage a few years later. *Id.* Defendant-appellee filed a declaratory judgment action in state court petitioning the court to determine her rights under the insurance policy. *Id.* In response, plaintiff-appellant initiated a federal declaratory action to bring all potential claimants across multiple litigations, including defendant-appellee, under one action so that claims could be resolved consistently and in their

entirety. *Id.* All of the claims were ultimately resolved except the one against defendant-appellant. *Id.* at 775–76. The federal district court abstained from resolving the matter on summary judgment, and plaintiff-appellant appealed. *Id.* at 776.

In reversing the district court, the Fifth Circuit stated that "the district court may not consider the merits of [a] declaratory judgment action when 1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, *and* 3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act." *Id.* at 776 (citations omitted). Notably, the declaratory plaintiff-appellant in *Travelers Ins. Co.* "brought [the] action in federal court neither to nullify [the defendant-appellee's] advantage in first bringing suit in [state court], nor to change forums," but rather to "avoid a multiplicity of lawsuits in different forums." *Id.* at 776–78. Further, the Fifth Circuit found that the defendant-appellee had "waived any right to assert that her state court action took precedence" over the federal action because she "exerted literally no effort whatever in her state case . . . in essence, abandon[ing] that state case." *Id.* at 778.

In the matter at hand, Defendants certainly have not abandoned their state case. As previously stated, a jury has already awarded damages to Defendants in the state court action. Further, the three elements of the test from *Travelers Ins. Co.* are all satisfied here. This Court has found that the Anti-Injunction Act prevents injunctive relief, and Defendants previously filed an action in state court against Plaintiffs. The state case also involves the same issues as the federal proceeding. Under Tennessee law, a breach of contract claim has three elements: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). Therefore, enforceability of the parties' agreements was

squarely at issue in the state court proceeding. As explained above, for the Court to grant Plaintiffs declaratory relief, it must necessarily determine the validity and enforceability of the Market and Customer Allocation Provisions within the contracts underlying the state action. Accordingly, the Court finds that it is barred by the Anti-Injunction Act from granting Plaintiffs the declaratory relief they seek.

## IV. CONCLUSION

If the state court had permitted Plaintiffs to amend their answer to include an antitrust defense, this Court would never have seen hide nor hair of this dispute. It is the state court's denial of Plaintiffs seeking leave to amend that brought this case before the Court, not antitrust issues themselves. However, Plaintiffs are not entitled to a federal adjudication of their antitrust claims. *See Bolingbrook*, 864 F.2d at 484–85. Nor are they entitled to federal review of the state court's denial of their motion to amend. The state court is more than capable of evaluating antitrust defenses, and the state court could have permitted Plaintiffs to amend their pleadings had the court deemed it appropriate. Plaintiffs are not entitled to use this Court as an end-around for an unfavorable state court decision, particularly when the parties are still in the appeals process. To allow this suit to proceed would be enabling that very outcome.

Therefore, based on the foregoing, Defendant's Motion to Dismiss [Doc. 30] is **GRANTED**, and Plaintiffs' Motion for Hearing [Doc. 34] and Motion for Reconsideration [Doc. 37] are **DENIED**. An appropriate judgment will follow.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

16
Case 1:21-cv-00113-JRG-SKL   Document 40   Filed 09/26/22   Page 16 of 16   PageID #: 789